Hovhannes Nazaryan, Pro Se
Reg. No. 86590-509
FCI Texarkana
Satellite Prison Camp
PO BOX 9300
Texarkana, TX 75505
(Pending change of address shortly after confirming with prerelease services)

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>HOVHANNES NAZARYAN,<br><br>Debtor.<br><br>MEHRAN JAVAHERIAN,<br><br>Plaintiff,<br><br>vs.<br><br>HOVHANNES NAZARYAN,<br><br>Defendant. | Case No.: 1:25-bk-10617-MB<br><br>Adv. Proc. No.: 1:26-ap-01031-MB<br><br>Chapter: 7<br><br>**Hon. Martin R. Barash**<br><br>Hearing:<br>Date: October 13, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 303<br>21041 Burbank Blvd.<br>Woodland Hills, CA 91367<br>[ZoomGov available per Dkt. 15]<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br>[11 U.S.C. § 105(a); FED. R. BANKR. P. 7065; FED. R. CIV. P. 65; ADV. DKTS. 4, 6, 12; ORDER CONTINUING HEARING, DKT. 15] |

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE; PLAINTIFF MEHRAN JAVAHERIAN; THE CHAPTER 7 TRUSTEE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL PARTIES IN INTEREST:**

Defendant Hovhannes Nazaryan ("Defendant"), appearing Pro Se, opposes Plaintiff's motion for a preliminary injunction that would bar him from prosecuting Nazaryan v. Javaherian, Los Angeles Superior Court Case No. 26VECV02080 (the "State Action"), "in any respect."

## I. INTRODUCTION

Defendant does not ask this Court to undo Docket 96 or to recover the $120,000 paid to the estate. The First Amended Complaint in the State Action dropped quiet title. Defendant will withdraw the April 10, 2026 lis pendens. What remains is a claim for the value of furnishings Plaintiff is presently marketing — the same furnishings a buyer-side broker allocated at $400,000 on August 30, 2026, as a line separate from the lot. A money judgment is an adequate remedy. Section 363(m) already protects the sale of the lot. A preliminary injunction that bars prosecution of the entire State Action is unnecessary and overbroad.

The Sale Order is final. It transferred the estate's interest as described in Bankr. Dkt. 94. It did not adjudicate the fair-market value of identifiable furnishings now being marketed, and it did not enjoin a later conversion case. If the Court writes any order, it should be limited to what is needed to protect that finality: that Defendant not seek quiet title or set-aside of Docket 96, and that the lis pendens come off. The Court should not enjoin conversion, trespass to chattels, unjust enrichment, or accounting of the contents.

## II. THE MOTION BEFORE THE COURT

1. *The motion being heard.* Plaintiff filed a motion for preliminary injunction in June 2026 (Adv. Dkts. 4, 6) and a further amended motion on July 22, 2026 (Adv. Dkt. 12). Those papers ask the Court, pending judgment in this adversary proceeding, to enjoin Defendant "from prosecuting, continuing, or taking any further action" in the State Action, "or any other action in any forum that constitutes a collateral attack on the Sale Order," and to enjoin any further lis pendens against 24366 La Masina Court, Calabasas, California 91302 (the "Property").

2. *The governing scheduling order.* On August 27, 2026, the Court entered its Order Continuing Hearing on Plaintiff's Motion for Preliminary Injunction and Extending Related Deadlines (Adv. Dkt. 15). The Court continued the hearing to October 13, 2026, at 1:30 p.m.; extended Defendant's opposition deadline to September 28, 2026; and extended Plaintiff's reply deadline to October 8, 2026, with "no further briefing" thereafter. Dkt. 16 reset the hearing on Dkt. 12. Dkt. 18 stacked the adversary status conference onto the same date and hour. This opposition is filed to that order.

3. *No later amended motion was filed.* Dkt. 12 is the operative noticed motion. Plaintiff did not file a further amended motion, a further memorandum, or — so far as the docket reflects — the authenticated copies of the

original state complaint and the lis pendens that Dkt. 15 ¶ 2 required by September 3, 2026. Defendant does not ask the Court to take the motion off calendar for that reason. He asks the Court to decide the injunction that was actually noticed, against the State Action that actually exists.

4. *The complaint this motion describes is not the live pleading.* Plaintiff's moving papers and Adv. Dkt. 1 describe the original April 2026 Superior Court complaint: seven counts including wrongful foreclosure, cancellation of instruments, and quiet title, plus a lis pendens recorded April 10, 2026. The operative pleading in Van Nuys is the First Amended Complaint filed July 15, 2026. That pleading does not seek quiet title. The causes now alleged are conversion, trespass to chattels, unjust enrichment, declaratory relief concerning the scope of the trustee settlement, intentional interference with prospective economic advantage, conspiracy, and accounting. A noticed motion in the Superior Court seeks leave only to amend Prayer A to $400,000. That is the State Action this motion should be measured against.

## III. RELEVANT BACKGROUND

5. On April 14, 2025, Defendant filed a chapter 7 petition, Case No. 1:25-bk-10617-MB. Trustee Nancy J. Zamora was appointed. Defendant was incarcerated throughout the administration of the case and remains so until on or about September 28, 2026.

6. On July 18, 2025, the Trustee and Plaintiff filed a Stipulation to Resolve Sale Motion and Motion for Relief from Stay (Bankr. Dkt. 94). The same day, this Court entered its Order Approving Stipulation "in its entirety" (Bankr. Dkt. 96) (together with Dkt. 94, the "Sale Order"). Defendant did not appeal. He does not ask this Court to unwind that order or to recover the $120,000 paid to the estate.

7. The operative transfer language is Bankr. Dkt. 94 ¶ 2: Plaintiff paid $120,000 "in exchange for Trustee's release and transfer to Creditor of the Estate's right, title and interest in the Real Property … and the Personal Property." Bankr. Dkt. 94 ¶ 9 deemed Defendant's $1,000 personal-property exemption allowed. Recital C recites the schedules: "used housing goods" at $1,000. That is the order this Court entered. The $1,000 line is a final exemption allowance. It is not a finding of fair-market value, and it is not a cap on a later conversion claim about the furnishings now being marketed. The question this motion presents is not whether Docket 96 is final. It is whether a later state-court damages case about furnishings Plaintiff is now marketing — as goods

in a listing, priced separately from the lot — is a collateral attack on that order, and whether the Court must gag the entire Superior Court file to protect the house.

8. The original State Action was filed in April 2026 and a lis pendens was recorded April 10, 2026. Those are the facts on which Plaintiff built Dkt. 1 and this motion. They are no longer a complete description of the State Action.

9. Defendant filed that original complaint and recorded the lis pendens while incarcerated, appearing without counsel, and with limited ability to obtain the Sale Order papers or to confer about what Docket 96 had already decided. He does not ask this Court to try that first pleading. After the complaint was tested against the record, he amended. The First Amended Complaint dropped quiet title. Defendant will withdraw the April 10, 2026 lis pendens. He is scheduled for release today, September 28, 2026, and signed this opposition upon his arrival in California. He cannot give the Court a recordation date today. He will take the steps to execute and record a withdrawal at the first opportunity after release. The motion should not be decided on the assumption that he intends to leave the lis pendens in place. He does not seek to set aside Docket 96 or to recover the $120,000. The motion should be decided against that file, not against a pro se pleading drafted from prison camp.

10. After the Sale Order, Plaintiff took possession of the residence. In 2026 the Property has been marketed as a furnished package. Listing photographs show staged rooms and identifiable furnishings. On August 30, 2026, buyer-side broker David R. Smith of Team Smith CA wrote that a live offer allocated $4.5 million to the real property and $400,000 to furniture, that the furniture "can be paid for separately," and that the rooms were furnished. The goods in dispute in the State Action are the goods in that listing, priced as a line separate from the lot. Defendant refers to the Smith communication and the photographs to show what is being sold and why money is an adequate remedy. He does not offer the $400,000 figure as already admitted for its truth, and he does not ask this Court to police a state-court settlement number.

11. Particular furnishings have been discussed as distinct items — including in correspondence that treated a piano as its own subject — rather than as an undifferentiated unit of "used household goods." The market is now doing the same thing. He does not seek quiet title, cancellation of the Sale Order, recovery of the $120,000, or fee title to the lot. Supporting declaration and request for judicial notice are filed concurrently.

## IV. LEGAL STANDARD

12. Section 105(a) authorizes orders "necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). The Ninth Circuit applies the traditional preliminary-injunction standard to injunctions issued under that section. *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1093–96 (9th Cir. 2007).

13. A preliminary injunction is "an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). The movant must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each element is required. Irreparable harm is not presumed from the existence of a prior order.

14. An injunction that runs against a pending state-court action meets also the Anti-Injunction Act, 28 U.S.C. § 2283. The relitigation exception permits a federal court to protect and effectuate its own judgments. It does not authorize an injunction broader than the judgment being protected. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988). Section 105(a) is not a warrant to freeze every later lawsuit that mentions the same street address.

## V. ARGUMENT

### A. Plaintiff Will Not Suffer Irreparable Harm Once the Lis Pendens Is Off Title

15. Plaintiff's own papers identify the irreparable harm as the April 10, 2026 lis pendens — a "cloud on title" that impairs his ability to sell, refinance, or encumber the Property. Adv. Dkt. 4 at 10; Bereliani Decl. ¶¶ 10, 13. That cloud is of a piece with the original complaint's quiet-title and cancellation counts. Both are leaving the file. Withdrawal is a function of Defendant's release and of navigating the restrictions of prerelease services, not of a decision to keep title clouded. This is the harm Plaintiff identified. It is also the portion of the original filing Defendant is curing.

16. A conversion case for money is not a cloud on the deed. California records title; it does not record a damages prayer. Once the lis pendens is withdrawn, Plaintiff can sell the house. He does not need an injunction of the State Action in order to close a sale of the lot. If a buyer wants the furniture as well, that is a contents problem with a contents remedy.

17. Money damages are an adequate remedy for alleged conversion and unjust enrichment of furnishings. That is the ordinary rule. The uniqueness of real property is not the uniqueness of a piano or a couch. Plaintiff's own marketing treats the furniture as a separate $400,000 line that "can be paid for separately." A dispute about that line is a dollar dispute.

18. Being required to defend a narrowed state case is not irreparable harm. Litigation cost and the risk of an adverse money judgment are what *Winter* and *Excel Innovations* refuse to treat as a basis for preliminary relief. If Plaintiff wants a declaration that Docket 96 sold particular household goods, that question can be tried in this adversary proceeding. It is not a reason to enjoin the Superior Court.

**B. Likelihood of Success Does Not Support a Blanket Injunction**

19. Defendant accepts what Docket 96 decided. The Sale Order is final. Defendant was a party. He did not appeal. A final bankruptcy order is immune from collateral attack on the matters it actually resolved. *Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151–54 (2009); *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995). This Court retains jurisdiction to interpret and enforce its own order.

20. Those cases do not hold that every later lawsuit touching property that once passed through an estate is an attack on the sale order. The original State Action — quiet title, cancellation, wrongful foreclosure, a lis pendens — was closer to the problem Plaintiff described in June. The live FAC is not. It does not ask Van Nuys to set aside Docket 96, to quiet title in Defendant, or to claw back the $120,000. A money claim for furnishings being marketed after the sale is not the same lawsuit as a quiet-title attack on the deed.

21. Section 363(m) already protects Plaintiff's interest in the real property. The real-property transfer was not stayed and was not appealed. A later damages judgment about furniture does not reverse a section 363 transfer of land. *See* 11 U.S.C. § 363(m); *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 279–81 (9th Cir. 1992). Plaintiff does not need a second injunction to keep the lot. Defendant does not volunteer, and this opposition does not concede, that Docket 96 sold every identifiable furnishing now being offered to a buyer as a separate $400,000 line. What "Personal Property" in Docket 96 reached is a question for the merits of this adversary proceeding. It does not justify preliminary relief enjoining the State Action.

22. Judicial estoppel does not fill the gap. The doctrine requires a clearly inconsistent position, judicial acceptance of the earlier position, and an unfair advantage. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001);

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Defendant scheduled "used household goods" at $1,000 and claimed a matching exemption under 11 U.S.C. § 522 while incarcerated, with limited substantive communication with then-counsel. Bankr. Dkt. 94 ¶ 9 allowed that exemption. Exemption schedules are estimates, prepared under time pressure, often by counsel and often without an appraisal. An allowed $1,000 household-goods exemption is ordinary. It is not a bench trial on a particular piece of personal property.

23. The $1,000 figure was scheduled as an exemption for "used household goods." It was not an appraisal of identifiable furnishings, and Docket 96 did not try title to those items as a conversion case. A schedule entry can be evidence. It is not, without more, a judicial admission that identifiable furnishings later photographed and marketed as a separate $400,000 line have a cap of $1,000.

24. Plaintiff cannot have the schedule both ways. In September 2025, Plaintiff's then-bankruptcy counsel wrote that the estate's interest in "all the personal property" at the residence was sold to Plaintiff and that Defendant was paid $1,000. That is Plaintiff's description of the deal, offered to Defendant's former counsel after the Sale Order. It undercuts any claim that Defendant is springing a surprise valuation. The parties have themselves discussed particular furnishings as distinct items. The listing and the Smith allocation now treat those same goods as a line separate from the lot. The only live question is what Docket 96 actually transferred. That question does not require an injunction of the entire State Action.

25. Standing is not a reason to freeze Van Nuys. To the extent any claim existed on the petition date and remained estate property, the Trustee administered the estate's interest through Docket 96. The theory that matters here is post-sale conduct: taking and marketing the furnishings in the listing, and answering in damages if those furnishings were not what Docket 96 sold, or if they were scheduled at $1,000 while being offered to the market as a separate $400,000 line.

26. Likelihood of success, in short, is likelihood of success on a *narrow* claim: that Defendant may not collaterally attack Docket 96 or relitigate fee title. Plaintiff is not likely to succeed on the claim he actually noticed — that every remaining count in 26VECV02080 is foreclosed and must be enjoined "in any respect."

**C. The Balance of Equities Tips Against a Blanket Injunction**

27. Plaintiff paid $120,000 for the estate’s interest as described in Docket 94. He is now marketing a package in the range of $4.9 million with furniture in the listing, priced separately from the lot. Enjoining the contents claims while that packaged sale proceeds is the hardship this factor addresses.

28. Defendant has been incarcerated throughout this adversary proceeding thus far. He filed the original State Action without counsel and with limited access to the papers this motion treats as decisive. He has already done the work this motion says is required to protect title: quiet title is out of the live complaint, and the lis pendens will be withdrawn. Holding him to Docket 96 is fair. Using the April complaint — and not the amended one — as the reason to enjoin the entire Superior Court case is not.

**D. The Public Interest Does Not Favor Enjoining the Live State Case**

29. The public interest favors the finality of section 363 sales. *Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1172 (9th Cir. 1988). That interest is served by protecting the real property — which section 363(m) already does — and by an order that Defendant not seek quiet title or set-aside. It is not served by using section 105(a) to shut a Superior Court file that no longer seeks those things. Finality is not the same thing as immunity from a later accounting of what the purchaser is selling.

**E. Any Injunction Must Be No Broader Than Docket 96**

30. The Anti-Injunction Act’s relitigation exception, and section 105(a) itself, are limited by the judgment being protected. *Chick Kam Choo*, 486 U.S. at 148; *Travelers*, 557 U.S. at 151–54. Docket 96 approved a stipulation transferring the estate’s interest in the real property and “the Personal Property,” allowed a $1,000 exemption, and resolved the Trustee’s sale motion and Plaintiff’s stay-relief motion. It did not adjudicate, claim by claim, a 2026 Superior Court complaint that had not been filed. It did not enjoin conversion. It did not decide the fair-market value of furnishings a broker would later price at $400,000 as a line separate from the real property.

31. Defendant does not oppose a narrow order limited to the following terms: that he shall not seek to set aside Bankr. Dkts. 94 and 96; that he shall not prosecute quiet title to the Property; and that he shall withdraw, and not re-record, any lis pendens against 24366 La Masina Court. He will oppose any order that he is “enjoined

from prosecuting LASC 26VECV02080 in any respect," or that would enjoin claims for conversion, trespass to chattels, unjust enrichment, or accounting, or bar prosecution of those claims to judgment.

### F. If Any Injunction Issues, a Bond Should Be Required

32. Rule 65(c), applicable through Bankruptcy Rule 7065, requires security. The Court may set the amount, *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), but Plaintiff's request for no bond rests on the premise that the State Action is worthless. That premise is the merits dispute. If the Court issues even a narrow injunction, it should not do so on the theory that Defendant faces no harm from losing access to a contents case Plaintiff is simultaneously monetizing.

## VI. CONCLUSION

33. The motion should be denied. In the alternative, any preliminary relief should be limited to the three terms in paragraph 31. The Court should not enjoin the contents case.

Dated this 28th of September, 2026.

Hovhannes Nazaryan, Pro Se

Hovhannes Nazaryan
Debtor, Pro Se
Register No. 86590-509
FCI Texarkana Satellite Camp
P.O. Box 9300
Texarkana, TX 75505

(Pending change of address shortly after confirming with prerelease services)

Hovhannes Nazaryan, Pro Se
Reg. No. 86590-509
FCI Texarkana
Satellite Prison Camp
PO BOX 9300
Texarkana, TX 75505
(Pending change of address shortly after confirming with prerelease services)

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>HOVHANNES NAZARYAN,<br><br>Debtor.<br><br>MEHRAN JAVAHERIAN,<br><br>Plaintiff,<br><br>vs.<br><br>HOVHANNES NAZARYAN,<br><br>Defendant. | Case No.: 1:25-bk-10617-MB<br><br>Adv. Proc. No.: 1:26-ap-01031-MB<br><br>Chapter: 7<br><br>**Hon. Martin R. Barash**<br><br>Hearing:<br>Date: October 13, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 303<br>21041 Burbank Blvd.<br>Woodland Hills, CA 91367<br>[ZoomGov available per Dkt. 15]<br><br>DECLARATION OF HOVHANNES NAZARYAN IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

I, Hovhannes Nazaryan, declare:

1. I am the defendant in this adversary proceeding and the debtor in Case No. 1:25-bk-10617-MB. I am also the plaintiff in *Nazaryan v. Javaherian*, Los Angeles Superior Court Case No. 26VECV02080 (the "State Action"). I make this declaration of my own personal knowledge, except where stated on information and belief, and if called could testify competently to these facts.

2. I was incarcerated at FCI Texarkana, Satellite Camp, register number 86590-509, during the administration of my chapter 7 case and during this adversary proceeding. I am scheduled for release on September 28, 2026. I am signing this declaration and the accompanying opposition in California on that date. I do not yet have a

post-release address. I will file a notice of change of address when prerelease services assign one.

**The Sale Order**

3. I filed a chapter 7 petition on April 14, 2025. Nancy J. Zamora was appointed trustee. On July 18, 2025, the Trustee and Mehran Javaherian filed a Stipulation to Resolve Sale Motion and Motion for Relief from Stay (Bankr. Dkt. 94). This Court approved that stipulation in its entirety the same day (Bankr. Dkt. 96). I did not appeal. I do not ask this Court to unwind Docket 96 or to recover the $120,000 paid to the estate.

4. I scheduled “used household goods” at $1,000 and claimed a matching exemption under 11 U.S.C. § 522. Bankr. Dkt. 94 ¶ 9 allowed that exemption. Recital C of Bankr. Dkt. 94 recites “used housing goods” at $1,000. That figure was prepared while I was incarcerated. I did not walk the house for an inventory. I did not obtain an appraisal of identifiable furnishings. My communication with then-counsel about the contents of the house was limited. I understood the $1,000 line as an ordinary household-goods exemption estimate. It was not an appraisal of particular items, and it was not a release of a later claim if those items were taken or sold.

**The State Action**

5. In April 2026 I filed the original complaint in the State Action, and a lis pendens was recorded against 24366 La Masina Court, Calabasas, California 91302 on April 10, 2026. I filed that pleading while incarcerated within the BOP, without counsel, and with limited ability to obtain the Sale Order papers or to confer about what Docket 96 had already decided.

6. I later amended. The First Amended Complaint in the State Action was filed July 15, 2026. It does not seek quiet title. The live causes include conversion, trespass to chattels, unjust enrichment, declaratory relief concerning the scope of the trustee settlement, intentional interference with prospective economic advantage, conspiracy, and accounting. I have asked the Superior Court for leave only to amend Prayer A in regards to claimed damages.

7. I will withdraw the April 10, 2026 lis pendens. I cannot give the Court a recordation date today. As soon as I am able to sign and transmit papers after release, and subject to the restrictions of prerelease services, I will take the steps required to execute and record that withdrawal. I am not holding the lis pendens in place as

leverage, and I am not seeking to keep a cloud on title. I do not seek to quiet title to the real property, to cancel Docket 96, to recover the $120,000, or to take fee title. For purposes of this motion, the claims I am pursuing in the Superior Court concern the furnishings being marketed with the residence.

**The listing, the Smith line, and the exhibits**

8. After the Sale Order, Mehran Javaherian took possession of the residence. Since then, the property has been marketed as a furnished house. I have reviewed listing or marketing photographs of staged rooms and identifiable furnishings at 24366 La Masina Court (**Exhibit B**) at the time of signing this declaration. The goods in dispute in the State Action are the goods in that listing, priced as a line separate from the real property.

9. On or about August 30, 2026, buyer-side broker David R. Smith of Team Smith CA wrote that a live offer allocated $4.5 million to the real property and $400,000 to furniture, for a total of $4.9 million; that the furniture “can be paid for separately”; and that the listed rooms were furnished. I reviewed these emails. I did not set the $400,000 number. I refer to it only to show what is being offered for sale and that the furniture is being priced as a line separate from the real property. I do not ask this Court to treat $400,000 as a finding, and I do not ask this Court to police a state-court settlement number.

10. Particular furnishings at the house have been discussed as distinct items rather than as an undifferentiated unit of “used household goods.” The listing and the Smith correspondence treat them the same way: a line separate from the real property.

11. Attached to this declaration are copies I directed be printed and assembled from materials I have reviewed:

**Exhibit A**. A true and correct copy of the Smith correspondence described in paragraph 9, including the August 30, 2026 message. I have reviewed the attached printout.

**Exhibit B**. True and correct copies of representative photographs from the Zillow listing for 24366 La Masina Court, showing furnished rooms. I directed that those images be printed from that listing. I have reviewed the attached copies. Exhibit B is a sample of how the residence is being marketed. It is not an inventory and it is not exhaustive.

**Relief**

12. I oppose a preliminary injunction that would bar me from prosecuting the State Action "in any respect." I do not oppose a narrow order that I shall not seek to set aside Bankr. Dkts. 94 and 96, that I shall not prosecute quiet title to the real property, and that I shall withdraw and not re-record a lis pendens against 24366 La Masina Court. I oppose any order that would enjoin claims for conversion, trespass to chattels, unjust enrichment, or accounting concerning the contents, or bar prosecution of those claims to judgment.
13. I directed Zarik Minasyan to type this declaration, to print and assemble Exhibits A and B from the materials described above, and to arrange service. She is not an attorney. She has not given me legal advice. The statements in this declaration are mine.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated this 28th of September, 2026.

[signature]
Hovhannes Nazaryan, Pro Se

Hovhannes Nazaryan
Debtor, Pro Se
Register No. 86590-509
FCI Texarkana Satellite Camp
P.O. Box 9300
Texarkana, TX 75505

(Pending change of address shortly after confirming with prerelease services)

**EXHIBIT A**

Email from David R. Smith to annapali123@icloud.com

August 30, 2026, 5:24 p.m. CDT

Subject: Re: La Masina HVAC

It can be.
The offer on the table now has a purchase price of $4.5M and then $400k for the furniture for a total purchase price of $4.9M.
To Your Success!



annapali123@icloud.com 4:37 PM
Thank you for sending I also noticed th...

DS David R. Smith 5:24 PM
To: annapali123@icloud.com >

It can be.

The offer on the table now has a purchase price of $4.5M and then $400k for the furniture for a total purchase price of $4.9M.

To Your Success!



See More

Gmail

Clerical Assistant <clericalassistant.nazaryan@gmail.com>

## Fwd: La Masina HVAC

**annapali123@icloud.com** <annapali123@icloud.com> Sun, Aug 30, 2026 at 4:10 PM
To: clericalassistant.nazaryan@gmail.com

Sent from my iPhone

Begin forwarded message:

**From:** "David R. Smith" <david@teamsmithca.com>
**Date:** August 30, 2026 at 5:24:04 PM CDT
**To:** annapali123@icloud.com
**Subject: Re: La Masina HVAC**

It can be.

The offer on the table now has a purchase price of $4.5M and then $400k for the furniture for a total purchase price of $4.9M.

To Your Success!

On Aug 30, 2026, at 2:37 PM, annapali123@icloud.com wrote:

Thank you for sending

**I also noticed the furniture shown in the pictures. Could you please let me know if the furniture is included in the asking price?**

Sent from my iPhone

On Aug 30, 2026, at 3:05 PM, David R. Smith <david@teamsmithca.com> wrote:

To Your Success!

<Invoice #138584.pdf>
<Comfort Condensing Unit, Furnace and Coil with Ductwork and Multiple Furnaces_.pdf>

<PastedGraphic-1.tiff>

Email from David R. Smith to annapali123@icloud.com

Subject: Re: From Anna

> There isn't a list but all bedrooms are furnished, formal living room and one family room, gym, bar/ game room, outdoor furniture, and office too.
> Yes they can be paid for separately.
> I thought I sent you the current offer breaksodnw where buyer is offering to pay $4.5M for house and an additional $400k for furniture.
> Any other questions let me know.
> Just FYI the faster way to communicate for me is via text 310-480-7523 but its up to you.
> To Your Success!



DS David R. Smith 11:48 AM
To: annapali123@icloud.com >

**Re: From Anna**

There isn't a list but all bedrooms are furnished, formal living room and one family room, gym, bar/ game room, outdoor furniture, and office too.

Yes they can be paid for separately.

I thought I sent you the current offer breaksodnw where buyer is offering to pay $4.5M for house and an additional $400k for furniture.

Any other questions let me know.

Just FYI the faster way to communicate for me is via text 310-480-7523 but its up to you.

To Your Success!

Tap to Download
ic-1.tiff

Gmail **Clerical Assistant <clericalassistant.nazaryan@gmail.com>**

## Fwd: From Anna

**annapali123@icloud.com** <annapali123@icloud.com> Tue, Sep 1, 2026 at 10:32 AM
To: clericalassistant.nazaryan@gmail.com

Sent from my iPhone

Begin forwarded message:

**From:** "David R. Smith" <david@teamsmithca.com>
**Date:** September 1, 2026 at 11:48:47 AM CDT
**To:** annapali123@icloud.com
**Subject: Re: From Anna**

There isn't a list but all bedrooms are furnished, formal living room and one family room, gym, bar/ game room, outdoor furniture, and office too.

Yes they can be paid for separately.

I thought I sent you the current offer breaksodnw where buyer is offering to pay $4.5M for house and an additional $400k for furniture.

Any other questions let me know.

Just FYI the faster way to communicate for me is via text 310-480-7523 but its up to you.

To Your Success!

On Aug 31, 2026, at 8:14 PM, annapali123@icloud.com wrote:

Hi David,

If there is a list of what the $400k covers, please send it.

Also: can the house and the furniture be treated separately, or does the buyer have to take both together?

Thank you.

Sent from my iPhone

On Aug 31, 2026, at 6:28 PM, David R. Smith <david@teamsmithca.com> wrote:

Any questions?

To Your Success!

On Aug 28, 2026, at 2:54 PM, annapali123@icloud.com wrote:

Dear David,

**Exhibit B** – Zillow Listing Screen Captures




https://www.zillow.com/homedetails/24366-La-Masina-Ct-Calabasas-CA-91302/19896929_zpid/

(Current as of September 28, 2026)


/24366-La-Masina-Ct-Calabasas-CA-91302/19896929_zpid/?msockid=0a91067ec35266ee0a5213bbc2e8670f
Back to listing
Save
Share
Hide
$4,995,000
5 bd 8 ba 10,452 sqft
24366 La Masina Ct
Calabasas, CA 91302
Request a tour
as early as today at 1:30 pm
Contact agent

Hovhannes Nazaryan, Pro Se
Reg. No. 86590-509
FCI Texarkana
Satellite Prison Camp
PO BOX 9300
Texarkana, TX 75505
(Pending change of address shortly after confirming with prerelease services)

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>HOVHANNES NAZARYAN,<br><br>Debtor.<br><br>MEHRAN JAVAHERIAN,<br><br>Plaintiff,<br><br>vs.<br><br>HOVHANNES NAZARYAN,<br><br>Defendant. | Case No.: 1:25-bk-10617-MB<br><br>Adv. Proc. No.: 1:26-ap-01031-MB<br><br>Chapter: 7<br><br>**Hon. Martin R. Barash**<br><br>Hearing:<br>Date: October 13, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 303<br>21041 Burbank Blvd.<br>Woodland Hills, CA 91367<br>[ZoomGov available per Dkt. 15]<br><br>DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE; PLAINTIFF MEHRAN JAVAHERIAN; THE CHAPTER 7 TRUSTEE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL PARTIES IN INTEREST:

Defendant Hovhannes Nazaryan respectfully requests that the Court take judicial notice, pursuant to Federal Rule of Evidence 201 and Federal Rule of Bankruptcy Procedure 9017, of the following records.

**Superior Court records (copies attached)**

A. First Amended Complaint in Nazaryan v. Javaherian, Los Angeles Superior Court Case No. 26VECV02080, filed July 15, 2026. Judicial notice is requested of the existence, filing date, and contents of that pleading — including that it does not seek quiet title, and that the causes alleged include conversion, trespass to chattels, unjust enrichment, declaratory relief concerning the scope of the trustee settlement, intentional interference with prospective economic advantage, conspiracy, and accounting. A true and correct copy is attached as **RJN Exhibit A**.

B. Original complaint in Nazaryan v. Javaherian, Los Angeles Superior Court Case No. 26VECV02080, filed April 8, 2026, including the quiet-title, cancellation, and wrongful-foreclosure counts described in Plaintiff's moving papers and in Adv. Dkt. 1. A true and correct copy is attached as **RJN Exhibit B**.

**Records of this Court (noticed from the docket; no copies attached)**

C. Bankr. Dkt. 94 — Stipulation to Resolve Sale Motion and Motion for Relief from Stay, filed July 18, 2025, including ¶ 2, ¶ 9, and Recital C.

D. Bankr. Dkt. 96 — Order Approving Stipulation, entered July 18, 2025.

E. Adv. Dkt. 1 — Complaint in this adversary proceeding.

F. Adv. Dkts. 4, 6, and 12 — Plaintiff's motion for preliminary injunction and the amended motion now on calendar.

G. Adv. Dkt. 15 — Order Continuing Hearing on Plaintiff's Motion for Preliminary Injunction and Extending Related Deadlines, entered August 27, 2026.

H. Adv. Dkts. 16 and 18 — hearing reset and status-conference stacking, to the extent needed to show what is on calendar.

**Purpose and limit**

Judicial notice is requested of the existence, filing dates, and contents of these records. Defendant does not ask the Court to take judicial notice of the truth of disputed factual allegations in any pleading, or of the fair-market value of any furnishing.

Copies of the Superior Court records are attached as RJN Exhibits A and B. Papers already on this Court's docket are noticed from the docket.

Dated this 28th of September, 2026.

Hovhannes Nazaryan, Pro Se

Hovhannes Nazaryan
Debtor, Pro Se
Register No. 86590-509
FCI Texarkana Satellite Camp
P.O. Box 9300
Texarkana, TX 75505

(Pending change of address shortly after confirming with prerelease services)

RJN EXHIBIT A

to Defendant's Request for Judicial Notice

in Support of Opposition to Plaintiff's Motion for Preliminary Injunction
1:25-bk-10617-MB

Adv. Proc. No. 1:26-ap-01031-MB
First Amended Complaint

Nazaryan v. Javaherian

Los Angeles Superior Court Case No. 26VECV02080

Filed July 15, 2026

Electronically Received 07/15/2026 10:15 PM

Hovhannes Nazaryan, Pro Se
Reg. No. 86590-509
FCI Texarkana
Satellite Prison Camp
PO BOX 9300
Texarkana, TX 75505

**Electronically FILED by
Superior Court of California,
County of Los Angeles
7/15/2026 10:15 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Mirzoyan, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES – VAN NUYS COURTHOUSE EAST

| | |
|---|---|
| HOVHANNES NAZARYAN,<br><br>Plaintiff,<br><br>vs.<br><br>MEHRAN JAVAHERIAN AND BENJAMIN JAVAHERIAN, and DOES 1 through 5, inclusive,<br><br>Defendants. | **Case No.: 26VECV02080**<br>**Dept: B**<br>**Hon. Elaine W. Mandel**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. Conversion**<br>**2. Trespass to Chattels**<br>**3. Unjust Enrichment / Restitution**<br>**4. Declaratory Relief**<br>**5. Intentional Interference with Prospective Economic Advantage**<br>**6. Civil Conspiracy**<br>**7. Accounting** |

**DEMAND FOR JURY TRIAL**

Pursuant to Code of Civil Procedure § 472, Plaintiff files this First Amended Complaint as a matter of right before any answer or demurrer has been filed by Defendants.

Plaintiff HOVHANNES NAZARYAN ("Plaintiff" or "Nazaryan"), appearing in pro per and currently incarcerated at Federal Correctional Institution – Satellite Camp, P.O. Box 9300, Texarkana, Texas 75505 (scheduled release September 28, 2026), alleges as follows:

**I. NATURE OF THE ACTION**

1. This action arises from Defendants' bad faith interference with Plaintiff's pending $4.8 million sale of the Property, their wrongful acceleration of foreclosure despite actual knowledge of a ready buyer, and conversion of Plaintiff's substantial personal property located inside the residence (valued in excess of $250,000). Defendants acted with actual knowledge of the fully executed purchase agreement and escrow while pursuing foreclosure and later consummating a limited $120,000 bankruptcy settlement.

2. The bankruptcy settlement approved on July 18, 2025, in In re Hovhannes Nazaryan, Case No. 1:25-bk-10617-MB (Bankr. C.D. Cal.), resolved only the Chapter 7 Trustee's interest in the real property. It did not release, transfer, or adjudicate Plaintiff's independent state-law claims for conversion and trespass to chattels of personal property, nor his claims for interference with the $4.8 million transaction or conspiracy. (A true and correct copy of the Stipulation and Order approving it is attached hereto as **Exhibit C**).

**II. PARTIES**

3. Plaintiff HOVHANNES NAZARYAN is an individual who, at all relevant times, held substantial ownership and possessory rights in the real property located at 24366 La Masina Court, Calabasas, California 91302 (the "Property"), together with all personal property located inside the residence.

4. Defendant MEHRAN JAVAHERIAN ("Mehran") is an individual residing in California who, at all relevant times, claimed an interest in and exercised dominion and control over the Property and Plaintiff's personal property located therein.

5. Defendant BENJAMIN JAVAHERIAN ("Benjamin") is an individual residing in California who acted as the primary point of contact and agent for Mehran in communications with Plaintiff and in furtherance of the conduct alleged herein.

6. Plaintiff is informed and believes, and based thereon alleges, that Defendants Mehran Javaherian and Benjamin Javaherian acted in concert, as co-conspirators, and/or as principal and agent in committing the wrongful conduct alleged herein.

7. The true names and capacities of Defendants sued herein as DOES 1 through 5, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each

Doe Defendant was the agent, employee, co-conspirator, aider and abettor, and/or joint venturer of the named Defendants and acted within the course and scope of such relationship.

**III. JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action because the amount in controversy exceeds $35,000 and the claims arise under California law.

9. Venue is proper in Los Angeles County pursuant to Code of Civil Procedure section 395 because the Property is located in Los Angeles County and the acts and omissions alleged herein occurred in Los Angeles County.

**IV. FACTUAL ALLEGATIONS**

**A. The Property and Plaintiff's Interests**

10. At all relevant times prior to Defendants' wrongful conduct, Plaintiff held substantial ownership and possessory rights in the real property at 24366 La Masina Court, Calabasas, CA 91302, together with all personal property, furnishings, and chattels located inside the residence. Defendants Mehran Javaherian and Benjamin Javaherian held a second-position lien on the Property securing a loan with an approximate balance of $1,200,000.

**B. The Loan Relationship and Course of Dealing with Defendants**

11. Plaintiff's dealings with Defendants Mehran Javaherian and Benjamin Javaherian were conducted through their mutual associate Edgar Sargsyan, who acted as an intermediary. In or around July 2023, when the second-position lien in the approximate amount of $1,200,000 was placed on the Property, Plaintiff had never spoken directly with Defendants. The agreement reached at that time, communicated through Sargsyan, was that after an initial interest payment, no further payments would be required for a period of one year. Plaintiff first had direct contact with Defendant Benjamin Javaherian in or around March 2024 after being unable to reach Sargsyan. The parties then began discussing payment arrangements by text and telephone. In August 2024, at the conclusion of that one-year period, Benjamin Javaherian informed Plaintiff via text message that late fees would apply but that the default interest rate would not be imposed, further confirming the parties' ongoing understanding that strict enforcement of the loan would not be pursued while Plaintiff worked to sell the Property and satisfy his obligations. (True and correct copies of key text messages are attached hereto as **Exhibit D**).

**C. The Pending $4.8 Million Sale and Defendants' Actual Knowledge (2024)**

12. From early spring through summer 2024, Plaintiff and Defendants maintained ongoing communications regarding payments on the loan. These discussions continued while Plaintiff actively worked to sell the Property in order to satisfy his obligations to Defendants.

13. On August 11, 2024, Benjamin sent Plaintiff a calculation of amounts due that included late charges and the 18% default interest rate. However, Benjamin stated that Mehran was willing to honor the original 12% interest rate if foreclosure could be avoided. Plaintiff responded that he would do everything possible to avoid putting Defendants in a bad situation. (See **Exhibit D**).

14. In or around September 2024, Plaintiff and Artur Nazaryan (as sellers) entered into a fully executed Residential Purchase Agreement (C.A.R. Form RPA) for the sale of the Property for $4,800,000. The transaction was placed into escrow (Chartwell Escrow No. CW-PJ-1267) with a legitimate buyer.

15. Plaintiff and his counsel, Craig Missakian, Esq., undertook good-faith efforts to close the sale, including addressing liens, taxes, restitution obligations, and lender communications. Substantial progress was made, and Plaintiff was actively pursuing the transaction.

16. Throughout September and October 2024, Defendants Mehran Javaherian and Benjamin Javaherian had actual knowledge of the pending $4,800,000 purchase agreement and escrow. This knowledge is evidenced by multiple direct text message communications between Plaintiff and Defendant Benjamin Javaherian. (See **Exhibit D**).

17. On September 3, 2024, Plaintiff urgently sought a meeting because the buyer was waiting for an answer. Benjamin later relayed that Mehran wanted the back payments brought current but indicated a willingness to extend the loan.

18. On September 17, 2024, following coordination between the parties, Plaintiff physically appeared at Benjamin's office with the prospective buyer to advance the $4.8 million transaction.

19. On or about September 18, 2024, Plaintiff requested the payoff/demand letter. The following day, on September 19, 2024, Mehran issued a signed Payoff Demand Letter. (A true and correct copy of the Payoff Demand Letter is attached hereto as **Exhibit F**).

20. On September 19, 2024, Plaintiff asked if Benjamin had spoken to his brother Mehran about late fees. Benjamin replied that Mehran was not charging the 18% default interest but was still charging late charges.

21. On September 25, 2024, a Buyer Representation Agreement was executed between buyer Henri Mikayelyan and broker Hrant Petrosyan of CenturyMax Realty in connection with the transaction. The sellers (Nazaryans) also executed a Compensation Agreement on the same day agreeing to pay the broker, Hrant Petrosyan, $77,500.

22. On October 1, 2024, Plaintiff expressly texted Benjamin: “We open escrow yesterday i hope we will close end of the month just today we my attorney submitted paperwork to the government for release.” This communication directly notified Benjamin that the $4.8 million escrow was open and moving toward closing. (See **Exhibit D**).

23. On November 6, 2024, a Seller’s Estimated Closing Statement had been prepared reflecting an expected closing date of December 9, 2024. The statement showed that the $4,800,000 sale would pay off the existing first and second loans (including bringing Mehran’s loan current in the amount of $171,600), pay restitution to the United States, and cover other obligations, with the transaction structured to resolve Plaintiff’s outstanding amounts owed to Mehran. (A true and correct copy of the Seller’s Estimated Closing Statement is attached hereto as **Exhibit E**)

**D. Defendants’ Bad Faith Acceleration and False Statements (December 2024)**

24. On December 10, 2024 — just three days before Plaintiff was scheduled to self-surrender and begin serving his federal sentence — Defendant Benjamin Javaherian falsely texted Plaintiff that he had contacted escrow and was told “the sales felt through as the buyer was not able to get qualified to purchase the property.” Benjamin further stated that Mehran had filed for foreclosure the prior week because the escrow had fallen through. Defendants provided this notice only after accelerating foreclosure proceedings. (See **Exhibit D**).

25. These statements were false. Plaintiff had kept Benjamin fully informed of the pending $4.8 million transaction, including the explicit October 1, 2024 text confirming escrow had opened, and had previously brought the buyer to Benjamin’s office in September 2024.

26. On December 10, 2024, Plaintiff responded that escrow was still open, that there had been a government-related delay that was now resolved, and that it was important to meet. Plaintiff stated he wanted to come with the buyer, Henri Mikayelyan, and his broker, Hrant Petrosyan, the next day.

27. On December 11, 2024, the parties agreed to meet at 2:00 p.m. at Benjamin’s office. Plaintiff was still actively attempting to close the $4.8 million transaction at this time.

28. On December 13, 2024, Plaintiff self-surrendered to begin serving his federal sentence. His brother, Artur Nazaryan, had self-surrendered a few weeks prior on November 24, 2024. As a result, both Plaintiff and his brother were incarcerated and largely unable to respond to or contest the foreclosure proceedings during the period when Defendants accelerated and continued those proceedings, despite Plaintiff having a ready buyer and Defendants having previously indicated a willingness to extend the loan.

**E. Cancellation of the Escrow and Resulting Harm (January 2025)**

29. On January 30, 2025, the same buyer, Henri Mikayelyan, cancelled the escrow by mutual agreement as a direct result of Defendants' bad faith acceleration of foreclosure and interference with the pending transaction. An Amendment to Escrow Instructions authorized disbursement of only $36,500 in seller funds, including $9,125 to Hovhannes Nazaryan — a small fraction of what Plaintiff would have received had Defendants not wrongfully prevented the legitimate $4.8 million sale from closing.

**F. The Limited Scope of the Bankruptcy Settlement and Conversion of Personal Property**

30. On April 14, 2025, Plaintiff filed a voluntary Chapter 7 petition in the United States Bankruptcy Court, Central District of California, Case No. 1:25-bk-10617-MB. In connection with that filing, schedules were submitted that listed certain personal property located inside the residence and claimed an exemption of $1,000 for property described as "used housing goods," as permitted under applicable law. Due to Plaintiff's incarceration at the time, he had extremely limited ability to review the schedules or communicate substantively with counsel prior to filing.

31. On or about July 18, 2025, the Bankruptcy Court approved the Stipulation by and between Trustee and Creditor Mehran Javaherian to Resolve Sale Motion and Motion for Relief from Stay. Docket No. 94, filed July 18, 2025, in In re Hovhannes Nazaryan, Case No. 1:25-bk-10617-MB (Bankr. C.D. Cal.). Under that stipulation, Mehran paid only $120,000 to the estate. In exchange, the Trustee transferred to Mehran all of the Estate's right, title, and interest in the Real Property and Personal Property. This transfer was made free and clear of most liens except the first trust deed of AmWest Funding Corp. (approximately $3 million), certain tax and HOA obligations, the LAPFCU judgment lien, and the United States restitution lien. As a result, Mehran acquired ownership of the Property — which Plaintiff had negotiated to sell for $4,800,000 and which Defendants later listed for approximately $5.25 million — subject only to the senior lien, at a steep discount after interfering with the pending legitimate sale. (See **Exhibit C**).

32. This settlement resolved only the estate's interest in the real property. It did not release, transfer, or adjudicate Plaintiff's independent claims for conversion and trespass to chattels of his personal property located inside the residence, nor his claims for interference with the $4.8 million transaction or conspiracy.

33. Plaintiff never consented to Defendants taking possession or control of his personal property. The personal property included high-value items such as a Petrof Chippendale Grand Piano, custom office installations, luxury outdoor furniture, gym equipment, and other furnishings with a fair market value exceeding $250,000. (A true and correct copy of the Detailed Personal Property Inventory is attached hereto as **Exhibit A**).

34. Plaintiff was incarcerated at FCI Texarkana at all relevant times and did not receive proper notice of foreclosure proceedings, the transfer of the Property, or the disposition of his personal property. Defendants knew or should have known Plaintiff's place of incarceration and his inability to protect his property, yet proceeded without ensuring proper notice was provided.

35. After obtaining the benefits of the bankruptcy settlement, Defendants took possession and/or control of the Property and the personal property located therein. In or around August and September 2025, Plaintiff, through his then-counsel Anita Khachikyan, requested the return of at least the Petrof grand piano, which Plaintiff had identified as belonging to his daughter. Defendants, through counsel, refused the request, taking the position that all personal property at the residence had been transferred to Mehran as part of the $120,000 settlement. Defendants have continued to retain possession and control of Plaintiff's personal property without his consent. (A true and correct copy of the email exchange regarding the demand and refusal is attached hereto as **Exhibit B**).

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Conversion**

(Against Defendants Mehran Javaherian, Benjamin Javaherian, and DOES 1 through 5)

36. Plaintiff realleges and incorporates by reference paragraphs 1 through 34 as if fully set forth herein.

37. Plaintiff was the owner and/or had the right to immediate possession of the personal property located inside the Property.

38. Defendants wrongfully exercised dominion and control over Plaintiff's personal property, depriving Plaintiff of possession and use, without Plaintiff's consent.

39. Plaintiff has suffered damages in an amount to be proven at trial, but exceeding $250,000, plus interest and costs.

40. Defendants acted intentionally, maliciously, oppressively, and/or fraudulently, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to recover exemplary and punitive damages pursuant to Civil Code § 3294.

Plaintiff is informed and believes, and thereon alleges, that each Defendant, including DOES 1 through 5, was acting as the agent, employee, co-conspirator, aider and abettor, and/or joint venturer of each other Defendant in committing the acts alleged herein.

**SECOND CAUSE OF ACTION**

**Trespass to Chattels**

(Against Defendants Mehran Javaherian, Benjamin Javaherian, and DOES 1 through 5)

41. Plaintiff realleges paragraphs 1–34 and 35–39.

42. Defendants intentionally interfered with Plaintiff's possessory interest in his personal property by exercising dominion and control without consent, causing damage and deprivation of use.

43. As a direct and proximate result, Plaintiff suffered damages in an amount according to proof.

Plaintiff is informed and believes, and thereon alleges, that each Defendant, including DOES 1 through 5, was acting as the agent, employee, co-conspirator, aider and abettor, and/or joint venturer of each other Defendant in committing the acts alleged herein.

**THIRD CAUSE OF ACTION**

**Unjust Enrichment / Restitution**

(Against Defendants Mehran Javaherian, Benjamin Javaherian, and DOES 1 through 5)

44. Plaintiff realleges paragraphs 1–34.

45. Defendants have been unjustly enriched by retaining the benefit of Plaintiff's personal property and the Property itself without providing compensation or legal right, at Plaintiff's expense.

46. Equity and good conscience require restitution and disgorgement.

Plaintiff is informed and believes, and thereon alleges, that each Defendant, including DOES 1 through 5, was acting as the agent, employee, co-conspirator, aider and abettor, and/or joint venturer of each other Defendant in committing the acts alleged herein.

**FOURTH CAUSE OF ACTION**

**Declaratory Relief**

(Against Defendants Mehran Javaherian, Benjamin Javaherian, and DOES 1 through 5)

47. Plaintiff realleges paragraphs 1–34.

48. An actual controversy exists regarding the parties' rights and obligations concerning the Property, Plaintiff's personal property, and the scope and effect of the July 18, 2025 bankruptcy settlement between the Chapter 7 Trustee and Defendant Mehran Javaherian.

49. Plaintiff seeks a judicial declaration that the July 18, 2025 bankruptcy settlement resolved only the estate's interest in the real property and did not release, transfer, or adjudicate Plaintiff's independent state-law claims for conversion, trespass to chattels, or interference with the $4.8 million transaction.

Plaintiff is informed and believes, and thereon alleges, that each Defendant, including DOES 1 through 5, was acting as the agent, employee, co-conspirator, aider and abettor, and/or joint venturer of each other Defendant in committing the acts alleged herein.

**FIFTH CAUSE OF ACTION**

**Intentional Interference with Prospective Economic Advantage**

(Against Defendants Mehran Javaherian, Benjamin Javaherian, and DOES 1 through 5)

50. Plaintiff realleges paragraphs 1–34.

51. Plaintiff had a prospective economic advantage in the consummation of the $4,800,000 purchase agreement and escrow, of which Defendants had actual knowledge.

52. Defendants intentionally interfered with this prospective advantage by accelerating foreclosure, pursuing the bankruptcy settlement route, and preventing the legitimate sale from closing.

53. Defendants' interference was wrongful, independently tortious, and undertaken for the purpose of acquiring the Property at a steep discount.

54. Plaintiff has suffered damages in an amount to be proven at trial.

Plaintiff is informed and believes, and thereon alleges, that each Defendant, including DOES 1 through 5, was acting as the agent, employee, co-conspirator, aider and abettor, and/or joint venturer of each other Defendant in committing the acts alleged herein.

**SIXTH CAUSE OF ACTION**

**Civil Conspiracy**

(Against Defendants Mehran Javaherian, Benjamin Javaherian, and DOES 1 through 5)

55. Plaintiff realleges paragraphs 1–34 and 49–53.

56. Defendants Mehran and Benjamin Javaherian formed and carried out a conspiracy and agreement to interfere with Plaintiff's $4.8 million sale, to wrongfully foreclose, and to convert Plaintiff's personal property for their mutual benefit.

57. In furtherance of the conspiracy, Defendants committed the overt acts alleged herein.

58. Plaintiff has suffered damages as a proximate result of the conspiracy.

Plaintiff is informed and believes, and thereon alleges, that each Defendant, including DOES 1 through 5, was acting as the agent, employee, co-conspirator, aider and abettor, and/or joint venturer of each other Defendant in committing the acts alleged herein.

**SEVENTH CAUSE OF ACTION**

**Accounting**

(Against Defendants Mehran Javaherian, Benjamin Javaherian, and DOES 1 through 5)

59. Plaintiff realleges paragraphs 1–34.

60. Defendants have taken possession and control of Plaintiff's personal property and have derived (or may derive) rents, profits, proceeds, or other value from the Property and personal property.

61. Plaintiff is entitled to a full and complete accounting of all such amounts, and to judgment for any sums found due.

Plaintiff is informed and believes, and thereon alleges, that each Defendant, including DOES 1 through 5, was acting as the agent, employee, co-conspirator, aider and abettor, and/or joint venturer of each other Defendant in committing the acts alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

A. For general, special, and compensatory damages in an amount according to proof, but not less than $250,000 for conversion and trespass to chattels, plus additional damages for interference and conspiracy;

B. For punitive and exemplary damages in an amount sufficient to punish and deter Defendants' wrongful conduct;

C. For an order requiring Defendants to provide a full accounting of all rents, profits, proceeds, and value derived from the Property and Plaintiff's personal property, and for judgment in Plaintiff's favor for all sums found due;

D. For declaratory relief as prayed in the Fourth Cause of Action;

E. For cancellation of any void or voidable written instruments obtained through Defendants' wrongful conduct, as an alternative remedy;

F. For restitution and disgorgement of all unjust enrichment obtained by Defendants;

G. For costs of suit, prejudgment interest, and such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 15, 2026

Respectfully submitted,

Hovhannes Nazaryan, Pro Se

Hovhannes Nazaryan, Pro Se
Reg. No. 86590-509
FCI Texarkana
Satellite Prison Camp
PO BOX 9300
Texarkana, TX 75505

**VERIFICATION**

I, Hovhannes Nazaryan, am the Plaintiff in the above-entitled action. I have read the foregoing First Amended Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 15, 2026, at Texarkana, Texas.

Hovhannes Nazaryan, Pro Se

Hovhannes Nazaryan, Pro Se
Reg. No. 86590-509
FCI Texarkana
Satellite Prison Camp
PO BOX 9300
Texarkana, TX 75505

**LIST OF EXHIBITS**

**Exhibit A – Detailed Personal Property Inventory**

**Exhibit B – Email Exchange Regarding Demand for Return of Petrof Grand Piano (September 3, 2025)**

**Exhibit C – Bankruptcy Stipulation and Order Approving Stipulation (Docket Nos. 94 & 96)**

**Exhibit D – Key Text Message Communications Between Plaintiff and Defendant Benjamin Javaherian (August – December 2024)**

**Exhibit E – Seller's Estimated Closing Statement (November 6, 2024)**

**Exhibit F – Payoff Demand Letter from Mehran Javaherian (September 19, 2024)**

RJN EXHIBIT B

to Defendant’s Request for Judicial Notice

in Support of Opposition to Plaintiff’s Motion for Preliminary Injunction
1:25-bk-10617-MB

Adv. Proc. No. 1:26-ap-01031-MB
Original Complaint

Nazaryan v. Javaherian

Los Angeles Superior Court Case No. 26VECV02080

Filed April 8, 2026

**HOVHANNES NAZARYAN**
**P. O. Box 9300**
**Texarkana, TX 75505**

FILED
Superior Court of California
County of Los Angeles

APR 08 2026

David W. Slayton, Executive Officer/Clerk of Court
By: T. Abrahamyan, Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES, WEST DISTRICT**
**6230 Sylmar Avenue Van Nuys, CA 91401**

**HOVHANNES NAZARYAN**
Plaintiff, v.

**MEHRAN JAVAHERIAN,**
DOES 1 through 20, inclusive,

Defendant,

**COMPLAINT FOR:** 26VECV02080

1. **Conversion**
2. **Trespass to Chattels**
3. **Unjust Enrichment / Restitution**
4. **Declaratory Relief**
5. **Wrongful Foreclosure**
6. **Cancellation of Written Instruments**
7. **Quiet Title**

Plaintiff HOVHANNES NAZARYAN ("Plaintiff" or "Nazaryan") alleges as follows:

**PARTIES**

1. Plaintiff **HOVHANNES NAZARYAN** ("Plaintiff") is, and at all relevant times was, an individual and a resident of the County of Los Angeles, State of California. Plaintiff has lived in Los Angeles, California for many years and intends to return there upon release. Plaintiff is currently and temporarily housed at Federal Correctional Institution – Satellite Camp, P.O. Box 9300, Texarkana, Texas 75505 solely due to federal incarceration.

2. Plaintiff is informed and believes, and based thereon alleges, that Defendant **MEHRAN JAVAHERIAN** ("Defendant") is an individual residing in California, and at all relevant times claimed an interest in, exercised dominion over, and/or obtained possession of real and personal property located at 24366 La Masina Court, Calabasas, California 91302 ("Property").

3. The true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

4. Plaintiff is informed and believes, and thereon alleges, that each Defendant was the agent, employee, partner, co-conspirator, alter ego, aider and abettor, and/or joint venturer of each other Defendant, and in doing the things alleged herein was acting within the course and scope of such relationship.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action because the amount in controversy exceeds the minimum jurisdiction of this Court and because the causes of action arise under California law.

6. Venue is proper in Los Angeles County pursuant to Code of Civil Procedure section 395 because the Property is located in Los Angeles County and the acts and omissions alleged herein occurred in Los Angeles County.

## III. GENERAL ALLEGATIONS

7. Prior to the acts complained of herein, Plaintiff owned, possessed, and/or had the immediate right to possess substantial personal property located at the Property.

8. The personal property included, among other things, high-value furniture, luxury outdoor furniture, custom office installations, game room equipment, gym equipment, high-end appliances, and a Petrof Chippendale Grand Piano.

9. Based on Plaintiff's investigation and itemization, the fair market value of the personal property was not nominal and was not merely "used household goods" worth $1,000. Rather, the value of the personal property exceeded $250,000 and may exceed $300,000.

10. On April 14, 2025, Plaintiff filed a voluntary petition for relief under Chapter 7 in the United States Bankruptcy Court, Central District of California, Case No. 1:25-bk-10617-MB.

11. Plaintiff filed bankruptcy because of severe financial distress and inability to maintain obligations on secured and unsecured debts.

12. Immediately after the bankruptcy filing, control over the Property was effectively taken from Plaintiff as part of the Chapter 7 administration process, leaving Plaintiff without practical access to the Property or ability to protect his belongings.

13. During the bankruptcy case, the trustee entered into a stipulation with Defendant. That stipulation states that Defendant would pay $120,000 to the estate in exchange for the estate's right, title, and interest in the real property and the personal property (see Exhibit A attached hereto) in Case No. 1:25-bk-10617-MB.

14. The same stipulation described the personal property only as "used household goods" from Plaintiff's schedules and stated that Plaintiff valued such personal property at $1,000 and claimed a $1,000 exemption (see Exhibit A attached hereto) in Case No. 1:25-bk-10617-MB.

15. Plaintiff alleges that no true, fair, item-by-item inventory, inspection, appraisal, or meaningful valuation of Plaintiff's substantial high-value personal property was performed before Defendant took possession and control of same.

16. As a result, valuable personal property was swept into a transfer process that drastically undervalued it.

17. Plaintiff was at all relevant times in federal custody at FCI Texarkana and was unable to physically access, monitor, secure, or protect the Property or the personal property located there.

18. Plaintiff did not receive notice at FCI Texarkana of any foreclosure proceedings, foreclosure sale, transfer, sale, or disposition of the Property or Plaintiff's personal property.

19. Plaintiff is informed and believes, and based thereon alleges, that Defendant knew or should have known Plaintiff's place of incarceration and Plaintiff's inability to protect his property, yet proceeded without ensuring that proper notice was provided to Plaintiff at his known place of confinement.

20. As a result of the failure to provide notice, Plaintiff was deprived of a meaningful opportunity to object, protect his interests, seek relief, or otherwise take timely action regarding the Property and personal property.

21. After obtaining the benefits of the bankruptcy stipulation and related relief, Defendant took possession and/or control of the Property and the contents therein.

22. Plaintiff, through counsel, demanded that Defendant return at least the Petrof grand piano. Defendant refused.

23. Plaintiff is informed and believes, and based thereon alleges, that Defendant has retained, used, transferred, sold, concealed, and/or otherwise exercised dominion and control over Plaintiff's personal property for Defendant's own benefit.

24. Plaintiff does not seek in this action to relitigate the bankruptcy order as such. Rather, Plaintiff seeks relief based on Defendant's own independent wrongful conduct, including Defendant's refusal to compensate Plaintiff for valuable property, Defendant's wrongful retention and conversion of property, and Defendant's use of a defective and unfair process to obtain real and personal property.

25. The stipulation also states that upon final payment and finality of the order, Defendant would have relief from the automatic stay to exercise state-law rights under the second deed of trust (see Exhibit A attached hereto) in Case No. 1:25-bk-10617-MB.

26. Plaintiff is informed and believes, and based thereon alleges, that Defendant pursued and/or completed foreclosure-related acts without proper notice to Plaintiff and through a process infected by unfairness, procedural defect, lack of notice, gross undervaluation of personal property, and abuse of Plaintiff's inability to protect himself while incarcerated.

27. As a direct and proximate result of Defendant's acts, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $250,000.

## IV. FIRST CAUSE OF ACTION

**Conversion**

(Against All Defendants)

28. Plaintiff realleges and incorporates by reference paragraphs 1 through 27 as though fully set forth herein.

29. Plaintiff owned, possessed, and/or had the immediate right to possess the personal property described above.

30. Defendant intentionally and substantially interfered with Plaintiff's property rights by taking possession of the property, exercising dominion over it, excluding Plaintiff from it, retaining it, and refusing to return it or compensate Plaintiff for it after demand.

31. Defendant's conduct constituted conversion.

32. Pursuant to Civil Code section 3336, Plaintiff is entitled to recover the value of the property at the time of conversion, with interest, and fair compensation for time and money properly expended in pursuit of the property.

33. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount according to proof, but not less than $250,000.

34. Defendant acted intentionally, maliciously, oppressively, and/or fraudulently, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to recover exemplary and punitive damages pursuant to Civil Code section 3294.

## V. SECOND CAUSE OF ACTION

**Trespass to Chattels**
(Against All Defendants)

35. Plaintiff realleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

36. Defendant intentionally interfered with Plaintiff's possessory interest in the personal property.

37. Defendant's interference deprived Plaintiff of the use, possession, value, and benefit

of the personal property and caused actual injury.

38. As a direct and proximate result, Plaintiff suffered damages in an amount according to proof.

## VI. THIRD CAUSE OF ACTION

**Unjust Enrichment / Restitution**
(Against All Defendants)

39. Plaintiff realleges and incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

40. Defendant knowingly received and retained benefits from Plaintiff's personal property and/or from the wrongful acquisition, retention, transfer, or disposition of that property.

41. It would be unjust and inequitable for Defendant to retain such benefits without compensating Plaintiff.

42. Plaintiff is therefore entitled to restitution, disgorgement, and monetary relief according to proof.

## VII. FOURTH CAUSE OF ACTION

**Declaratory Relief**
(Code Civ. Proc., § 1060)
(Against All Defendants)

43. Plaintiff realleges and incorporates by reference paragraphs 1 through 42 as though fully set forth herein.

44. An actual controversy has arisen and now exists between Plaintiff and Defendant regarding their respective rights and obligations concerning Plaintiff's personal property and the legal consequences of Defendant's retention, conversion, and refusal to compensate Plaintiff.

45. Plaintiff contends Defendant is liable to Plaintiff for the fair value of the property and related damages.

46. Plaintiff seeks a judicial declaration of the parties' rights and duties.

## VIII. FIFTH CAUSE OF ACTION

**Wrongful Foreclosure**
(Against All Defendants)

47. Plaintiff realleges and incorporates by reference paragraphs 1 through 46 as though fully set forth herein.

48. Plaintiff is informed and believes, and based thereon alleges, that Defendant pursued and/or completed foreclosure proceedings or foreclosure-related acts affecting the Property.

49. Plaintiff alleges such foreclosure and/or foreclosure-related conduct was wrongful because it was carried out without proper notice to Plaintiff at his known place of incarceration, in bad faith, through procedural irregularities, through unfairness, and

through misuse of a process that simultaneously treated substantial personal property as only $1,000 while transferring broad interests for $120,000.

50. Plaintiff was deprived of a meaningful opportunity to protect his rights because he did not receive notice at FCI Texarkana.

51. As a direct and proximate result, Plaintiff has suffered damages according to proof.

## IX. SIXTH CAUSE OF ACTION

**Cancellation of Written Instruments**
(Civ. Code, § 3412)
(Against All Defendants)

52. Plaintiff realleges and incorporates by reference paragraphs 1 through 51 as though fully set forth herein.

53. Plaintiff is informed and believes, and based thereon alleges, that one or more written instruments, including but not limited to foreclosure-related notices, deeds, substitutions, assignments, or other documents affecting title or ownership, are void or voidable due to lack of notice, unfairness, procedural defect, fraud, mistake, and/or bad faith.

54. If left outstanding, such instruments may cause serious injury to Plaintiff.

55. Plaintiff therefore seeks cancellation of such instruments pursuant to Civil Code section 3412.

## X. SEVENTH CAUSE OF ACTION

**Quiet Title**
(Code Civ. Proc., § 760.020 et seq.)
(Against All Defendants)

56. Plaintiff realleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

57. The property that is the subject of this cause of action is commonly known as 24366 La Masina Court, Calabasas, California 91302. Plaintiff is informed and believes that the legal description is [insert legal description if known; otherwise leave for amendment].

58. Plaintiff claims title to the Property and the personal property located therein based on his prior ownership, subject to the bankruptcy proceedings and any subsequent transfers.

59. Defendant claims an adverse interest in the Property and personal property by virtue of the transactions and foreclosure-related acts described above.

60. Plaintiff seeks a determination of the adverse claims as of the date of judgment and a judgment quieting title in Plaintiff's favor according to proof.

## XI. PUNITIVE DAMAGE ALLEGATIONS

61. Plaintiff realleges and incorporates by reference paragraphs 1 through 60 as though fully set forth herein.

62. Defendant acted with malice, oppression, and fraud by knowingly taking advantage of Plaintiff's lack of access, lack of notice, and incarceration; by retaining and benefiting

from property grossly undervalued in the bankruptcy process; and by refusing to return or compensate Plaintiff for substantial high-value personal property after demand.

63. Plaintiff is therefore entitled to punitive damages pursuant to Civil Code section 3294.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant, and each of them, as follows:

1. For general and special damages according to proof, but not less than $250,000;
2. For the fair market value of converted property;
3. For loss-of-use damages and interest pursuant to Civil Code section 3336;
4. For restitution and disgorgement;
5. For declaratory relief;
6. For damages for wrongful foreclosure according to proof;
7. For cancellation of void or voidable written instruments pursuant to Civil Code section 3412;
8. For quiet title relief according to proof;
9. For punitive damages pursuant to Civil Code section 3294;
10. For costs of suit pursuant to Code of Civil Procedure section 1032;
11. For prejudgment interest;
12. For such other and further relief as the Court deems just and proper.

## XIII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

## VERIFICATION

I, Hovhannes Nazaryan, am the Plaintiff in this action. I have read the foregoing Complaint and know its contents. The same is true of my own knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on: 03. 30. , 2026

[signature]

Hovhannes Nazaryan
Plaintiff, In Pro Per

At: Federal Correctional Institution – Satellite Camp, Texarkana, Texas
Federal Correctional Institution – Satellite Camp
P.O. Box 9300
Texarkana, TX 75505

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>HOVHANNES NAZARYAN,<br><br>Debtor.<br><br>MEHRAN JAVAHERIAN,<br><br>Plaintiff,<br>vs.<br>HOVHANNES NAZARYAN,<br><br>Defendant. | Case No.: 1:25-bk-10617-MB<br><br>Adv. Proc. No.: 1:26-ap-01031-MB<br><br>Chapter: 7<br><br>**Hon. Martin R. Barash**<br><br>Hearing:<br>Date: October 13, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 303<br>21041 Burbank Blvd.<br>Woodland Hills, CA 91367<br>[ZoomGov available per Dkt. 15]<br><br>[PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

The Court has considered Plaintiff Mehran Javaherian's motion for a preliminary injunction (Adv. Dkts. 4, 6, 12), Defendant Hovhannes Nazaryan's opposition and supporting papers, any reply, and the record in this adversary proceeding and in Case No. 1:25-bk-10617-MB. The hearing was held on October 13, 2026, at 1:30 p.m.

The Court finds that Plaintiff has not shown irreparable harm from prosecution of the live First Amended Complaint in *Nazaryan v. Javaherian*, Los Angeles Superior Court Case No. 26VECV02080, once the April 10, 2026 lis pendens is withdrawn and quiet title is not being prosecuted. Bankr. Dkts. 94 and 96 remain final. 11 U.S.C. § 363(m) already protects the transfer of the estate's interest in the real property at 24366 La Masina Court, Calabasas, California 91302. A blanket injunction of Case No. 26VECV02080 is not necessary to protect those orders.

IT IS ORDERED:

1. The motion for a preliminary injunction is DENIED, except to the extent set forth below.

2. Defendant shall not seek, in Case No. 26VECV02080 or in any other action, to set aside Bankr. Dkt. 94 or Bankr. Dkt. 96, or to recover the $120,000 paid to the chapter 7 estate under those papers.

3. Defendant shall not prosecute a cause of action to quiet title to the real property at 24366 La Masina Court, Calabasas, California 91302.

4. Defendant shall execute and submit for recording a withdrawal of the lis pendens recorded April 10, 2026, against that real property as soon as practicable after his release, and in any event within twenty-one (21) days after he is released from BOP custody, and shall not record a further lis pendens against that real property based on Case No. 26VECV02080.

5. Except as provided in paragraphs 2 through 4, Defendant is not enjoined from prosecuting Case No. 26VECV02080. Without limitation, this Order does not enjoin claims for conversion, trespass to chattels, unjust enrichment, or accounting concerning personal property, or bar prosecution of those claims to judgment.

6. No bond is required because the motion is denied except for the narrow terms Defendant does not oppose.

7. This Order is without prejudice to the Court's interpretation and enforcement of Bankr. Dkts. 94 and 96 in this adversary proceeding.

IT IS SO ORDERED.

Date: _______________

_________________________________
**Honorable Martin R. Barash**
United States Bankruptcy Judge

Presented by:

**Hovhannes Nazaryan**
*Defendant, Pro Se*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
200 W. Milford St., Apt. 534, Glendale, CA 91203.

A true and correct copy of the foregoing document entitled (*specify*): Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction; Declaration of Hovhannes Nazaryan in Support, with Exhibits A–B; Defendant's Request for Judicial Notice in Support, with RJN Exhibits A–B; and Proposed Order on Plaintiff's Motion for Preliminary Injunction

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/28/2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Sanaz Sarah Bereliani, counsel of record for Plaintiff Mehran Javaherian (address as listed on the NEF)
Brian David Fittipaldi, Trial Attorney brian.fittipaldi@usdoj.gov
United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov
Nancy J. Zamora, Chapter 7 Trustee nzamora@ecf.axosfs.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _______________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 09/28/2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Overnight mail:
Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Blvd., Courtroom 303
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/28/2026 | Zarik Minasyan | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |